NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3001

KEITH A. FULTON,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

_____

DECIDED: April 6, 2006

_____

Before MAYER, LOURIE, and BRYSON, Circuit Judges.

PER CURIAM.

## DECISION

Keith Fulton ("Fulton") appeals from the final decision of the Merit Systems Protection Board (the "Board") sustaining his dismissal from the Department of the Army (the "Agency").  Fulton v. Dep't of the Army, No. DC-0752-04-0590-I-1 (M.S.P.B. Aug. 3, 2005).  We affirm.

## BACKGROUND

Fulton was formerly a Paramedic at the Department of Emergency Medicine Ambulance Service, Womack Army Medical Center, Fort Bragg, North Carolina.  Fulton v. Dep't of the Army, No. DC-0752-04-0590-I-1, slip. op. at 1 (M.S.P.B. Oct. 6, 2004)

("Initial Decision"). Effective May 28, 2004, the Agency removed Fulton from his position based on his alleged failure to follow written/established procedures when safety to the patient was endangered and his alleged falsification of a Fort Bragg EMS Prehospital Care Report ("Prehospital Report"). Id., slip op. at 2. Both charges of misconduct arose from Fulton's behavior on April 8, 2004, in responding to an emergency call concerning an 18-year-old woman (the "patient") having diabetic symptoms. Id. Fulton, who was accompanied during the emergency call by Samuel Johnston ("Johnston"), an emergency medical technician ("EMT"), allegedly used the same intravenous ("I.V.") catheter twice while attempting to start an I.V. line ("double stick") on the patient, and gave the patient an albuterol nebulizer treatment when it was not needed and was counter-indicated by the patient's symptoms. Id., slip op. at 2-3. Albuterol is an anti-asthmatic drug; however, it increases anxiety and is counter-indicated when patients are suffering from anxiety, as this patient was. Id., slip op. at 3-4. After Fulton and Johnston transported the patient to an off-base hospital, the patient told Johnston that Fulton reported on a Prehospital Report that he had taken her vital signs even though she did not believe that he had done so. Id., slip op. at 8.

Fulton's supervisor, Jean-Luis Gomes ("Gomes"), notified Fulton on April 19, 2004, that he was proposing his removal for failure to follow written/established procedures when safety to the patient is endangered and falsification of the Prehospital Report. Id., slip op. at 2. On May 21, 2004, Dr. Robert Desverreaux ("Desverreaux"), the deciding official, determined that both charges were supported by the evidence and warranted Fulton's removal effective May 28, 2004. Id. Fulton timely appealed to the Board.

The Administrative Judge ("AJ") sustained all of the Agency's charges and concluded that the penalty of removal was reasonable. Id., slip op. at 1. First, the AJ held that the Agency proved by preponderant evidence its charge of failure to follow written/established procedures when safety to the patient is endangered. Id., slip op. at 7. As an initial matter, the AJ stated that there was no dispute that Fulton administered albuterol as charged because Fulton admitted that he gave the patient albuterol for "anxiety," and that "he did not take her vital signs before administering the albuterol." Id., slip op. at 5-6. The AJ also held that the Agency proved Fulton's double-sticking of the patient based on the eyewitness testimony of Johnston. Id., slip op. at 6.

The AJ then found that Fulton's actions endangered the patient, crediting the testimony of Richard Clark ("Clark"), an EMT and training officer for the Agency, Desverreaux, a medical doctor and head of the Agency's emergency medicine department, and Johnston that double-sticking increases the risk of infection and injury to the patient, and that albuterol should not be used to treat a patient already suffering from anxiety. Id., slip op. at 5-6. The AJ also determined that the Agency had written/established procedures dealing with the treatment of anxiety and dealing with the appropriate I.V. administration, and that Fulton was on notice of those procedures. Id. The AJ therefore sustained the Agency's charge of failure to follow written/established procedures when safety to the patient is endangered.

Second, the AJ held that the Agency proved by preponderant evidence its charge of falsification of the Prehospital Report. Id., slip op. at 9. The AJ determined that Fulton did not take any vital signs from the patient and that Fulton admitted to falsifying the Prehospital Report based on the testimony of Johnston and Gomes. Id., slip op. at

8. The AJ also found that Fulton intended to falsify the form. Id. Third, the AJ held that Fulton did not prove by preponderant evidence his affirmative defense of retaliation for engaging in union activities and for accusing his supervisor of not properly filling out workers compensation forms for him. Id., slip op. at 10. Finally, the AJ upheld the penalty of removal because it was reasonable in light of the sustained charges and promoted the efficiency of the service. Id., slip op. at 12. The AJ concluded that the Agency showed "that it gave adequate consideration to the Douglas factors and thereafter properly exercised its managerial discretion in selecting the penalty of removal." Id.

Fulton sought review by the full Board, the Board denied his petition, and the AJ's decision became the final decision of the Board. See 5 C.F.R. § 1201.113(b). Fulton timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).

On appeal, Fulton makes three arguments. First, he contends that the Board applied the wrong law because his case should have been subject to "peer review" under Army Regulation ("AR") 40-68 rather than consideration by the Board. He also

cites other allegedly controlling regulations and publications that should have changed the result of his hearing. Second, Fulton contends that the Board failed to take into account relevant facts and failed to consider important grounds for relief. According to Fulton, the Board failed to review materials submitted by his representative. He also asserts that he sought and received permission from a doctor at Fort Bragg to administer the albuterol and that the Fort Bragg Medical Center manuals do not proscribe his supposed misconduct, i.e., double-sticking and the administration of albuterol for anxiety. In addition, Fulton challenges the credibility and character of the witnesses who testified against him, alleging that Johnston committed "medical malpractice," Clark purposely misled the Board as to Agency protocol, Gomes lied to the Board and committed other illegal acts not related to this action, and Desverreaux was a "YES Man" whose application of the Douglas factors was "lame." Fulton further asserts that the Board should have allowed discovery and permitted testimony by a Sergeant Keegan. Finally, Fulton argues that the government attorney violated Agency rules and lied to the Board, and that the Board showed bias against him in ruling in favor of the Agency.

The government first responds that the peer review process is irrelevant to Fulton's appeal because AR 40-68 refers to actions to limit a health care provider's clinical privileges or licenses and that the Army Regulations cited by Fulton are irrelevant. Second, the government argues that the silence of the Fort Bragg Medical Center manuals as to double-sticking and albuterol administration does not exculpate him because other rules proscribe his conduct. The government also asserts that Fulton's allegation that he sought and received permission from a doctor at Fort Bragg

to administer the albuterol is unsubstantiated in the record. In addition, the government contends that Fulton's allegations as to witness testimony are irrelevant, fail to overcome the AJ's credibility determinations, are not supported by the record, and are not material to the Board's decision to sustain his removal. Further, the government asserts that the AJ was within her discretion in denying Fulton's request for discovery as untimely and in not permitting Sergeant Keegan to testify. Finally, the government argues that Fulton's allegations of bias of the AJ and alleged misconduct by the government attorney are without merit and unsupported by the evidence.

We agree with the government that the Board did not apply the wrong law. AR 40-68 prescribes policies, procedures, and responsibilities for the administration of the "Clinical Quality Management Program." Section 6-1 of AR 40-68 describes a "peer review" process that applies in actions to limit a health care provider's privileges or licenses. Here, the Army removed Fulton for misconduct, rather than limiting his privileges or taking any licensing actions against him. Thus, his case was properly considered by the Board. Moreover, none of the other regulations or publications cited by Fulton are relevant to this case.

We also agree with the government that the Board did not fail to take into account relevant facts or fail to consider important grounds for relief. Even assuming arguendo that the Fort Bragg Medical Center manuals were silent on Fulton's misconduct, the Board properly relied on testimony and other documents proscribing double-sticking and administration of albuterol to patients suffering anxiety. Moreover, Fulton's allegation that he sought and received permission from a doctor at Fort Bragg to administer albuterol is not substantiated in the record.

Similarly, there is no basis for Fulton's claim that the Board improperly considered the testimony of Johnston, Clark, Gomes, and Desverraux. Fulton's allegations that Johnston committed "medical malpractice" do not impair Johnston's ability to testify truthfully as to whether Fulton administered albuterol, was responsible for double-sticking the patient, and fabricated vital signs in the Prehospital Report. Fulton's attacks on Clark also do not overcome the AJ's credibility determination that Fulton's use of albuterol and double-sticking the patient were contrary to training. In addition, Fulton's allegations that Gomes was biased are not supported by the record and, given the limited testimony of Gomes, were not relevant to the Board's decision to sustain Fulton's removal. Finally, Fulton's challenges to Desverraux's testimony are overcome by the AJ's findings that Desverraux's testimony on his evaluation of the Douglas factors was "credible and thorough."

Further, we reject Fulton's argument that the Board failed to comply with its rules. Fulton has presented no evidence that the testimony of Sergeant Keegan would have "made light" of Clark's testimony regarding the I.V. policy. We thus conclude that the AJ was within her discretion to exclude testimony from Sergeant Keegan. We also discern no abuse of discretion in the AJ's decision to deny Fulton's motion to compel discovery as untimely.

Finally, we agree with the government that Fulton's allegations of bias of the AJ and alleged misconduct by the government attorney are unsupported by the evidence. We have considered Fulton's remaining arguments and find them unpersuasive. We therefore affirm the Board's decision.